**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **SJR DEVELOPMENT LLC,** | **CASE NO.: 1:21-CV-647** |
| Plaintiff, | |
| v. | |
| | **DEMAND FOR JURY TRIAL** |
| **ALLTEX REFINERY LLC, ALLTEX OPERATING COMPANY, RUSSELL L. VERA, AMIDEE A. VERA, AND ARTHUR K. VERA** | |
| Defendants. | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff, SJR Development, LLC ("Plaintiff" or "SJR") hereby files this Complaint against Alltex Refinery LLC, Alltex Operating Company, Russell Vera, Amidee A. Vera, Arthur K. Vera (collectively, "Defendants") for breach of contract, fraud, securities violations, violation of the Racketeer Influenced and Correct Organization Act, 18 U.S.C. § 1964(c) ("RICO"), breach of fiduciary duty and civil theft, and hereby alleges as follows:

**THE PARTIES**

1.      Plaintiff, SJR Development, is a four-member New Mexico limited liability company that maintains its principal place of business at 401 S. Main Street, Carlsbad, New Mexico 88221. The four (4) members of SJR are residents of and domiciled in the state of New Mexico.

ORIGINAL COMPLAINT

2.      Defendant Alltex Refinery LLC is a Texas limited liability company that maintains its principal place of business at 402 W. Davis Street, Suite A, Luling, Texas 78648. Defendant Alltex Refinery LLC is comprised of two members, Arthur K. Vera and Amidee A. Vera, both of whom are domiciled in and reside in the state of Texas. Defendant Alltex Refinery LLC may be served through its registered agent, Russell L. Vera, at 402 W. Davis Street, Suite A, Luling, Texas 78648.

3.      Defendant Alltex Operating Company is a Texas for profit corporation that maintains its principal place of business at 402 W. Davis Street, Ste. A, Luling, Texas 78648. Defendant Alltex Operating Company can be served through its registered agent, Russell L. Vera, at 756 Saengerhalle, New Braunfels, Texas 78132.

4.      Defendant Russell L. Vera ("Defendant R Vera") resides in and is domiciled in the state of Texas, and in this judicial district.

5.      Defendant Amidee A. Vera ("Defendant A Vera") resides in and is domiciled in the state of Texas, and in this judicial district.

6.      Defendant Arthur K. Vera ("Defendant AK Vera") resides in and is domiciled in the state of Texas, and this judicial district.

7.      Plaintiff is informed and believes, and on that basis alleges, that at all relevant times mentioned in this Complaint, Defendants, and each of them, were acting in concert and active participation with each other in committing the wrongful acts alleged herein. Defendants were the agents of each other, acting within the scope and authority of that agency, with the knowledge, consent and approval of each other. Further, Plaintiff is informed and believes and based thereon alleges that Defendants, and each of them, are the alter ego of one another in that neither of the business entities are or were properly capitalized, corporate formalities which are and were not

ORIGINAL COMPLAINT                    2

followed, and that the individual RICO Defendant Russell L Vera uses the RICO entity shells for his own personal affairs and to achieve the results or the scheme.

8.     Plaintiff does not presently know the true names and capacities of the Defendants named as DOES 1 through 10 and therefore sues such Defendants by these fictitious names. Plaintiff believes that the Doe Defendants are persons or entities who are involved in the acts set forth below, either as independent contractors, agents, or employees of the known Defendants, or through entering into a conspiracy and agreement with the known Defendants to perform these acts, for financial gain and profit, in violation of Plaintiff's rights. Plaintiff will request leave of Court to amend this Complaint to set forth their true names, identities and capacities when Plaintiff ascertains them. The Doe Defendants and the known Defendants are referred to collectively as "Defendants".

## JURISDICTION AND VENUE

9.     The District Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because this action arises from violations of 18 U.S.C. § 1964(c); 15 U.S.C. § 78j(b), Section 10(b); and 17 C.F.R. § 240.10b-5. The District Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because Plaintiff resides in a different state than each Defendant and the amount in controversy exceeds the jurisdictional limits of this Court. This Court also enjoys supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's state law claims.

10.     The Court has personal jurisdiction over Defendants because each Defendant has committed tortious and unlawful conduct in the United States and the state of Texas that they knew would cause and which did in fact cause injury to Plaintiff in the state of Texas and this judicial district; and each Defendant engaged in interstate commerce between the state of Texas and New

Mexico. Personal jurisdiction over each Defendant is also proper because Defendant Alltex Refinery LLC is a registered Texas limited liability company with its principal place of business in this judicial district; Defendant Alltex Operating Company is a Texas for profit corporation with its principal place of business in this judicial district; individual Defendants R Vera, A Vera and AK Vera reside in and are domiciled in the state of Texas and this judicial district; and a substantial part of the events giving rise to the claims and the injury felt by Plaintiff alleged herein occurred in Texas and this judicial district.

11.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims and the actual harm to Plaintiff occurred in this District by reason of the Defendants' conduct as alleged below. Venue for the RICO claim is also proper in this Court pursuant to 18 U.S.C. § 1965(a) because this is a district in which the RICO entities and RICO individuals transacts their affairs. Venue is also proper in any judicial district in which any defendant would be amenable to personal jurisdiction.

**FACTUAL ALLEGATIONS RELATING TO PLAINTIFF'S CLAIMS**

12.     Defendants R Vera, A Vera, and AK Vera have operated multiple oil and gas companies under various names within various regions of the United States, including Defendant Alltex Refinery and Defendant Alltex Operating. Defendant R Vera carries a long history of legal problems with regard to unauthorized fundraising while operating oil companies within the states of Alaska, California, Washington, and Wisconsin.

13.     Defendants, by means of a scheme designed to defraud SJR of its investments, made material misrepresentations and omissions of fact to SJR concerning the financial condition of Alltex as well as the use and misappropriation of SJR's resources as alleged herein.

14.     On or around June 7, 2020, Stacy E. Bowman, a member of SJR, was introduced in person to Defendant R Vera at 402 W. Davis Street, Suite A, Luling, Texas 78648 by Allen Chavez of Paragon Industries as a potential investment opportunity in Defendants' business for the purchase and sale of crude oil.

15.     Through a series of interstate wires, such as electronic mail and text messages, as well as phone calls, beginning on or around June 7, 2020 and continuing through June 17, 2020, Defendant R Vera made material oral and written representations about an investment opportunity in Defendant Alltex's oil trading business to Mr. Bowman. Defendants unlawfully made use of means of communication, such as text messages and electronic attachments to text messages, in interstate commerce or of the mails for the purposes of offering, selling, or delivering unregistered securities to Plaintiff.

16.     On or around June 17, 2020, Tylor Scott, acting as an agent for Defendants, transmitted through electronic mail to Plaintiff's principal, Mr. Bowman, a proposed ten percent (10%) equity investment opportunity in Defendant R Vera's company, Defendant Alltex Refinery in exchange for $250,000.00. Through this communication, Mr. Scott represented he had previously invested with Defendant R Vera prior to forming Alltex in November 2017, Defendant Alltex had been actively buying and selling oil and needed to expand, specifically stating that Defendant Alltex had a great reputation with several crude sellers, and that the business value should exceed $5,000,000.00. Mr. Scott further attached a Negotiated Transaction Offering Term sheet.

17.     Through a series of interstate wires, such as electronic mail and text messages, as well as phone calls, beginning on or around June 10, 2020 and continuing through at least July 10, 2020, Defendant R Vera made material representations about an investment opportunity in

Defendant R Vera's oil trading business to Mr. Ryan Jefferson that did not include an equity ownership interest in Defendant Alltex Refinery.

18.     The material misrepresentations made to Mr. Bowman by Defendant R Vera on behalf of and within his scope of employment with Defendant Alltex Refinery in order to induce Plaintiff into investing in Defendants' oil and gas business include, inter alia, the following:

- Defendant Russell L. Vera texted Mr. Bowman on June 9, 2020 representing that the deal was done for the Katerina project, the reason he was seeking investment from Plaintiff, that he could start delivering four loads a day of oil beginning on the first, and that it would get Plaintiff € 20,000.00 per month.

19.     These representations were false at the time they were made and were made by Defendant R Vera individually and on behalf of Defendants with knowledge that they were false because the Katerina project was not done, four loads a day of oil was never delivered, and Plaintiff would never and did not ever receive € 20,000.00 per month.

20.     The representations made by Defendant R Vera individually and on behalf of Defendants were material to SJR investing in Defendant Alltex's business. The representations were also material to SJR entering into an investment agreement with Defendant Alltex.

21.     Unaware of the falsity of these representations, Plaintiff reasonably relied on Defendant Alltex Refinery's and Alltex Operating's agent Defendant R Vera's fraudulent misrepresentations and was thus fraudulently induced in entering into an oil trading investment agreement with Defendant Alltex.

22.     SJR entered into two written agreements with Defendant Alltex Refinery. In each instance, Defendant Alltex Refinery prepared and provided the agreements that were sent via electronic mail to and signed by one of SJR's owners and CFO, Mr. Ryan Jefferson.

23.     The first agreement, entitled Negotiated Transaction Offering Agreement, is dated

June 29, 2020 (the "June 29, 2020 Agreement") and was electronically mailed to Mr. Jefferson on

June 30, 2020. The June 29, 2020 Agreement provides in relevant part: "In exchange for $100,000,

the Investor/s receive $2 per barrel from the crude oil that is purchased with their monies on a cash

and carry basis for the Alltex processing facility…". The initial term of the agreement was for 90

days. The June 29, 2020 Agreement further provided that the oil was self-collateralizing for the

investors until sold, that SJR's monies would be paid back into an operating account directly for

reuse, and the proceeds from the $2.00 spread per barrel would be distributed to SJR "between the

25th and 1st after the settlement statement is received on the 20th for the previous month."

24.     In accordance with the June 29, 2020 Agreement, SJR provided $25,000.00 in

financial capital on June 30, 2020 via wire transfer to Defendant Alltex and then $75,000.00 in

financial capital via wire transfer on July 10, 2020 to Defendant Alltex for a total of $100,000 in

financial capital to Defendant Alltex.

25.     Once Defendants received SJR's investment monies, Defendant R Vera provided

limited information to SJR about its investment or the status of Defendant Alltex's oil trading

business. In one instance, Defendant R Vera provided photographs of trucks getting loaded with

oil for sale. In another instance, Defendant R Vera sent photographs of trucks that he did not own.

In yet another instance, Defendant R Vera informed SJR's representative, Ryan Jefferson, he had

procured a new buyer that was closer and thus providing a better financial return for SJR on its

investment.

26.     Defendants provided SJR with an excel spreadsheet, entitled Alltex Acquisition

Fund, on or around August 7, 2020 purportedly reflecting the purchase and sales of oil subject to

the June 29, 2020 Agreement and the amounts of monies owed to Plaintiffs under the June 29,

2020 Agreement. Defendants' Alltex Acquisition Fund reflected at least one expected payment to SJR in the amount of $2,478.00, which was short by twenty dollars implying that Defendants' financials were inaccurate or unreliable.

27.    On or around August 10, 2020, Defendant Alltex sent a check to SJR in the amount of $2,478.00, but it bounced in SJR's account. On or around August 18, 2020, Alltex paid $2,481.00 via ACH to cover the bank return fee. This amount was received by SJR.

28.    Defendants provided SJR with another excel spreadsheet, entitled Alltex Acquisition Fund and dated August 11, 2020, purportedly reflecting the purchase and sales of oil subject to the June 29, 2020 Agreement and the amounts of monies owed to Plaintiffs under the June 29, 2020 Agreement. The August 11, 2020 Alltex Acquisition Fund spreadsheet reflected another expected payment to SJR in the amount of $3,213.00, with an expected payment date of September 20, 2020 to October 1, 2020. Defendants Alltex paid SJR $3,213.00 on September 14, 2020 via ACH. On information and belief, these Alltex Acquisition Fund spreadsheets were based upon incomplete and inaccurate information.

29.    Defendants' Alltex Acquisition Fund dated September 14, 2020 reflected another expected payment to SJR in the amount of $2,347.03, with an expected payment date of October 20, 2020 to November 1, 2020. Defendant Alltex never paid SJR the $2,347.03 owed under the September 14, 2020 Alltex Acquisition Fund.

30.    On or before August 13, 2020, Defendant R Vera contacted SJR's representative Ryan Jefferson and Stacy E. Bowman by telephone and text message regarding additional investment opportunities in Defendant Alltex.

31.    During the time Defendant R Vera was soliciting investments for its oil and gas trading business, Defendant R Vera introduced Mr. Bowman at SJR to Rick Collette of Capital

Funding Solutions. Mr. Collette provided factoring services for various entities. Mr. Collette informed Mr. Bowman on the phone on or around August 6, 2020 that Defendant R Vera had encountered previous investment legal trouble with the Securities Exchange Commission, but that Defendant R Vera no longer had any legal trouble. In discussing his factoring services, Mr. Collette gave Mr. Bowman the impression that his company would be providing factoring services to Defendant Alltex in support of Defendant Alltex's investment deal with SJR to buy and sell oil.

32.     On or around August 13, 2020, Defendant R Vera spoke with Mr. Jefferson and Mr. Bowman about a further investment opportunity in Defendant Alltex. In this instance, Defendant Vera solicited an additional $100,000.00 dollars in exchange for a ten percent (10%) equity interest in Alltex and a corresponding share of Defendant Alltex's profits.

33.     During this conversation, as well as through a series of interstate wires, such as electronic mail and text messages, beginning on or around August 13, 2020 and continuing through at least September 21, 2020, Defendant R Vera made material representations to Mr. Jefferson about an investment/ownership opportunity in Defendant Alltex's oil trading business.

34.     The material misrepresentations made to Mr. Jefferson by Defendant R Vera individually and on behalf of Defendant Alltex include, *inter alia*, the following:

- Defendant Vera stated to Mr. Jefferson in at least a written document dated September 19, 2020 that Plaintiff would become a member of Defendant Alltex Refinery LLC with 10% equity interest and that Plaintiff would be entitled to 10% of Defendant Alltex's profits.

- Defendant R Vera also stated verbally on a phone call on or around September 14, 2020 and in a text message dated September 20, 2020 to Mr. Jefferson that Plaintiff would be part owners of a piece of property, i.e., a yard, in Smiley, Texas.

- Defendant R Vera verbally guaranteed to Mr. Bowman on September 19, 2020 that Defendant Alltex would provide monthly financial statements to Plaintiff beginning once a deal was in place;

- Defendant R Vera verbally guaranteed to Mr. Bowman on September 19, 2020 that Defendant Alltex would make monthly cash distributions within five days as opposed to the industry standard forty-five days through the use of a factoring company once a deal was in place; and

- Defendant Vera verbally guaranteed to Mr. Bowman a return on Plaintiff's investment of at least $100,000.00, the amount of money invested.

35.     These representations were false because Defendant R Vera never made Plaintiff a member of Defendant Alltex, never gave Plaintiff 10% equity interest in Defendant Alltex, never gave Plaintiff 10% of Plaintiff's profits or gave Plaintiff ownership of a yard purchased by Defendant Alltex in Smiley, Texas.

36.     These representations were false at the time they were made and were made by Defendants with knowledge that they were false because Defendants had no intention of making SJR a member of Defendant Alltex Refinery or Defendant Alltex Operating, had no intention of giving SJR ten percent (10%) of its profits, or making SJR co-owners of its new yard in Smiley, Texas. Further, the representations made by Defendant R Vera on behalf of and as an agent of Defendants Alltex Refinery and/or Alltex Operating were material to SJR further investing in Defendants' business and deciding to become a member of Defendant Alltex Refinery.

37.     Unaware of the falsity of these representations, SJR reasonably relied on Defendant R Vera's fraudulent misrepresentations and was thus fraudulently induced into making further investments into Defendant R Vera's oil trading business and in entering into a subsequent

ORIGINAL COMPLAINT                                10

investment agreement with Defendant Alltex. SJR's reliance was further reasonable in light of SJR's discussions with Mr. Collette about providing factoring services for Defendant Vera's business.

38.     On or around September 20, 2020, Defendant R Vera on behalf of Defendants transmitted via electronic mail a document entitled Negotiated Transaction Offering Agreement ("September 20, 2020 Agreement"). SJR entered into the agreement on or around even date.

39.     On information and belief based upon review of public filings in the Texas Secretary of State, Defendant R Vera was no longer an owner or member of Defendant Alltex Refinery and/or Defendant Alltex Operating at the time it solicited investment funds in exchange for an equity interest in Defendant Alltex Refinery and/or Defendant Alltex Operating.

40.     Per the September 20, 2020 Agreement, SJR agreed to provide $200,000 in financial capital, comprising $100,000.00 converted from the previous June 29, 2020 Agreement, $50,000.00 in new capital infusion and a $50,000.00 note receivable at zero percent (0%) interest in exchange for "10% Member's Equity Interest" in Defendant Alltex.

41.     On or around September 22, 2020, SJR paid an additional $50,000.00 to Defendants.

42.     In the September 20, 2020 Agreement, parties agreed Defendant Alltex Refinery and/or Defendant Alltex Operating will provide "a Schedule 1099-MISC Other Income for July 2020 – August 2020 per Alltex and SJR's previous agreement" (dated June 29, 2020). "SJR will receive a K-1 Partner's (or Shareholder's) Share of Income, Deductions, Credits, etc. for 10% interest beginning September 1, 2020 from Alltex."

43.     In the September 20, 2020 Agreement, the parties also agreed, "Checks will go out to the investor every month starting in October 2020 after the settlement statement is received

between the 20th and the last day of the month, for the duration of the agreement, and financials will be provided monthly for the previous month."

44.     Defendant Alltex breached its obligations under both agreements by, *inter alia*, failing to compensate SJR in accordance with the agreed terms, by failing to make SJR a member of Defendant Alltex, by failing to provide monthly financials, by failing to provide any financials showing property on the books of Defendant Alltex. Defendant Alltex further breached its obligations under the September 20, 2020 Agreement by failing to provide both Schedule 1099-MISC and K-1 Partner's (or Shareholder's) Share of Income, Deductions, Credits, etc. from Alltex.

45.     Defendant R Vera's deception did not stop after the September 20, 2020 Agreement was signed. Defendant R Vera made misrepresentation in the course of conducting the business of Defendant Alltex, or in a transaction in which Defendant R Vera and Defendant Alltex had a pecuniary interest, for the guidance of SJR in its business as investors in Defendant Alltex; Defendant R Vera failed to exercise reasonable care or competence in obtaining or communicating the information about the investment, SJR's return on investment and payments according to the terms of the agreements; and SJR suffered pecuniary loss by justifiably relying on the misrepresentation.

46.     In one instance, SJR representative Mr. Ryan Jefferson asked Defendant R Vera about payments and updated financials on or around September 21, 2020. In a response dated September 25, 2020, Defendant R Vera told Mr. Jefferson payment was coming. No payments or financials were transmitted to SJR. Instead, SJR received a letter dated October 16, 2020 but not received until October 21, 2020 on Defendant Alltex Refinery's letterhead and signed by Defendant Vera. The letter indicated Defendant Alltex's offices had been closed for the past 30-45 days due to COVID 19 and because Defendant R Vera had contracted COVID 19. The letter

further indicated that Defendant Alltex had been able to secure new contracts and the project would now become profitable in the month of October 2020.

47.    Defendants' October 16, 2020 letter was particularly misleading and deceptive because Defendant R Vera had been communicating via text message with SJR's Mr. Ryan Jefferson continuously between September and October 2020 about soliciting more money from SJR to become equity owners of Defendant Alltex without ever mentioning COVID 19 or that the office had shut down for thirty to forty-five days.

48.    Defendants were also unresponsive to several requests by SJR's representative, Ryan Jefferson, to obtain financial information and to inspect Defendants' books and records.

49.    On February 9, 2021, SJR's representative, Ryan Jefferson, informed Defendants he would be visiting Defendant Alltex's place of operations on February 24, 2021 to inspect the books and records. Mr. Jefferson also provided a detailed list of documents SJR was requesting to have readily available for inspection. This visit was confirmed with Defendants via text message by Mr. Jefferson on or around February 11, 2021.

50.    The requested documents included: (1) December 31, 2019 Balance Sheet; (2) monthly bank reconciliations and bank statements for January 2019 through January 2020; (3) Aging Accounts Receivables for December 31, 2019, August 30, 2020 and December 31, 2020; (4) A/R Purchased & Sold Not Paid Yet for December 31, 2019, August 30, 2020 and December 31, 2020; (5) Unbilled JIB for December 31, 2019, August 30, 2020, and December 31, 2020; (6) Purchase Contracts/Escrow Statements for the new yard Defendant Alltex purchased in Smiley, Texas in September 2020; (7) Aging Accounts Payable for December 31, 2019, August 30, 2020 and December 31, 2020; and (8) Detailed General Ledger for January 1, 2020 through December 31, 2020.

51.     On February 23, 2021, the day SJR's team was scheduled to travel to Texas, Defendant R Vera urged to reschedule the visit due to inclement Texas weather. Despite the inconvenience and last-minute nature of the request, SJR agreed to reschedule the visit to Defendant Alltex's offices for March 3, 2021 at 8:00AM.

52.     Mr. Jefferson arrived at Defendant Alltex's offices at 08:00AM on March 3, 2021 to find no one there and the doors locked. Mr. Jefferson immediately messaged Defendant R Vera about the meeting and inquired about the expected time Defendants would arrive at the office to provide SJR with Defendants' books and records. Defendant R Vera called Mr. Jefferson and asked why Mr. Jefferson was at the office stating the meeting was for another day and that they were not ready. Defendant further informed Mr. Jefferson was trying to close a deal on another $150,000.00 deal and the office employees were unavailable.

53.     Defendant R Vera's bookkeeper allowed Mr. Jefferson into the office. The bookkeeper did not provide Mr. Jefferson with any of the financial books and records he had asked for. When Mr. Jefferson asked to look on the computer to inspect the books and records on March 3, 2021, he was told by the bookkeeper that the accounting software was locked due to failure to pay. When Mr. Jefferson asked to pay the amount owed as a part owner, he was told Defendant Vera would do it on Friday and SJR was not allowed to do that.

54.     Despite Defendants' obligation under at least the September 20, 2020 Agreement, SJR never received the financial or accounting documents it requested from Defendants. What's more, SJR never received the monies it was owed under either the June 29, 2020 Agreement or September 20, 2020 Agreement.

55.     Following Defendants refusal to meet with SJR or provide the necessary accounting, SJR contacted Defendants to demand the return of their investment pursuant to the

terms of at least the June 29, 2020 Agreement. Defendants never responded to this request.

56.    To add further injury, SJR was forced to engage legal counsel to protect its rights that were infringed upon by Defendants and reclaim its property unlawfully appropriated by Defendants.

57.    On March 17, 2021 and pursuant to the terms of at least the June 29, 2020 Agreement, SJR sent another correspondence to Defendants demanding the return of its $150,000 capital investment.

58.    Rather than complying with SJR's request, Defendants made a representation about a new contract for oil, and asked Defendants for 90 days to realize the profit and "revisit the situation."

59.    SJR rejected Defendants request, informing Defendants its demand still stood and the return of funds was expected within the thirty-day timeline as provided in at least the June 29, 2020 Agreement. The funds were never returned to SJR or its representative.

60.    If Defendants would have made full and honest disclosure of this material information to SJR, SJR would have intervened to prevent Defendants from engaging in these unlawful and tortious acts.

61.    All conditions precedent have been met.

## COUNT I
## BREACH OF CONTRACTS
### (*Against Defendant Alltex Refinery and Alltex Operating*)

62.    SJR repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

63.    Two valid contracts existed between SJR and Defendants. The June 29, 2020 Agreement and the September 20, 2020 Agreement.

64.     In support of the June 29, 2020 Agreement, written offers were made by Defendants, which were memorialized in writing, accepted by SJR and signed by both parties.

65.     SJR performed by providing Defendants significant investment funds and performed all obligations and complied with all conditions and requirements under the June 29, 2020 Agreement with Defendant Alltex. To the extent SJR has not performed all obligations and complied with all of the conditions and requirements its performance has been excused, waived, prevented or made impossible or impracticable by Defendants.

66.     Defendants breached the June 29, 2020 Agreement by, *inter alia*, failing to return the SJR's financial investment according to the terms of the June 29, 2020 Agreement.

67.     In support of the September 20, 2020 Agreement, written offers were made by Defendants, which were memorialized in writing, accepted by SJR and signed by both parties.

68.     SJR performed by providing Defendants significant investment funds and performed all obligations and complied with all conditions and requirements under the September 20, 2020 Agreement with Defendants. To the extent that SJR has not performed all obligations and complied with all of the conditions and requirements his performance has been excused, waived, prevented or made impossible or impracticable by Defendants.

69.     Defendants breached the September 20, 2020 Agreement by, *inter alia*, failing to provide monthly financial and accounting information, failing to make SJR a member of Defendant Alltex, failing to give SJR ten percent (10%) equity interest in Defendant Alltex, and failing to give SJR ownership interest in property purchased in Smiley, Texas by Defendant Alltex with SJR's investment capital. Defendant Alltex further breached its obligations under the September 20, 2020 Agreement by failing to provide both Schedule 1099-MISC and K-1 Partner's (or Shareholder's) Share of Income, Deductions, Credits, etc. from Alltex.

70.     As a direct and proximate cause of Defendants' breaches of the June 29, 2020 Agreement and September 20, 2020 Agreement, SJR suffered damages because it has been deprived of the bargained-for benefit of its agreements with Defendants.

71.     Because Defendants failed to comply with the June 29, 2020 Agreement, they are liable to SJR for recovery of the benefit of the bargain or reliance damages from Defendants, including but not limited to damages that were a substantial factor and/or the natural, probable, and foreseeable consequence of Defendants conduct. Such damages include but are not limited to SJR's lost profits, fees and expenses incurred to try to secure performance by Defendants, and damages resulting from delays in payments.

72.     SJR is also entitled to obtain equitable relief in the form of cancellation or recission of the June 29, 2020 Agreement. The Court should declare the June 29, 2020 agreement unenforceable and/order them rescinded.

73.     Because Defendants failed to comply with the September 20, 2020 Agreement, they are liable to SJR for recovery of the benefit of the bargain or reliance damages from Defendants, including but not limited to damages that were a substantial factor and/or the natural, probable, and foreseeable consequence of Defendants conduct. Such damages include but are not limited to SJR's lost profits, fees and expenses incurred to try to secure performance by Defendants, and damages resulting from delays in payments.

74.     SJR is also entitled to obtain equitable relief in the form of cancellation or recission of the September 20, 2020 Agreement. The Court should declare the September 20, 2020 Agreement unenforceable and/order them rescinded.

75.     Alternately, Defendants are liable to SJR for specific performance of the September 20, 2020 Agreement, including a judicial decree that SJR is a ten percent (10%) equity member of

Defendant Alltex, entitled to ten percent (10%) of Defendant Alltex's profits and co-owner of the property located in Smiley, Texas that was purchased with SJR's investment funds.

76.     In addition to mandatory injunctive relief and/or damages, SJR is entitled to compensation for his expenses in this litigation.

## COUNT II
## FRAUDULENT INDUCEMENT
### (*Against All Defendants*)

77.     To the extent not inconsistent herein, the above allegations contained in paragraphs 1 through 76 of this Complaint are incorporated by reference as if fully set forth herein. This cause of action is alleged in the alternative or in addition as authorized by FED. R. CIV. P. 8.

78.     Defendants' actions were done fraudulently, maliciously, and oppressively. Plaintiff is therefore entitled to punitive and exemplary damages against Defendants in an amount sufficient to punish and make an example of them.

79.     Defendants, by means of a scheme designed to defraud members of SJR of its investments, made material misrepresentations and omissions of fact to SJR concerning the financial condition of SJR's investment as well as the use and misappropriation of SJR's resources, fully described above and incorporated herein.

80.     Defendants fraudulently induced SJR into entering into the June 29, 2020 Agreement by knowingly misrepresenting Defendants' ability and/or willingness to pay SJR returns on its investment and to return SJR's investment within 30 days if and when SJR requested such a return. In doing so, Defendants made materially false statements, with knowledge of their falsity or asserted without knowledge of their truth, with the intention that they should be acted on by SJR, which SJR relied upon, and which caused injury to SJR by entering into the June 29, 2020 Agreement which SJR would otherwise not have entered. As a result, SJR is entitled to recover

actual damages including either benefit-of-the-bargain damages (measured by the difference between the value as represented and the value received) or out-of-pocket damages (measured by the difference between the value expended versus the value received).

81.   Defendants fraudulently induced SJR into entering into the September 20, 2020 Agreement by knowingly misrepresenting Defendants ability and/or willingness to make SJR a member of Defendant Alltex, to give SJR an equity share of Defendant Alltex's profits, and to own a share of the property located in Smiley, Texas. In doing so, Defendants made materially false statements, with knowledge of their falsity or asserted without knowledge of their truth, with the intention that they should be acted on by SJR, which SJR relied upon, and which caused injury to SJR by entering into the September 20, 2020 Agreement which SJR would otherwise not have entered. As a result, SJR is entitled to recover actual damages including either benefit-of-the-bargain damages (measured by the difference between the value as represented and the value received) or out-of-pocket damages (measured by the difference between the value expended versus the value received).

82.   Defendants made the representation with the intent for SJR to act on it by entering into a contract and by providing investment funds to Defendants.

83.   SJR acted in reliance upon the representation by entering into the contracts and providing a substantial amount of financial capital to Defendants. Defendants therefore fraudulently induced SJR to enter into the June 29, 2020 Agreement, the September 20, 2020 Agreement, and to provide $150,000.00 in monies.

84.   As a proximate result of such fraud, SJR sustained damages in an amount to be demonstrated at trial but believed in excess of $150,000.00. Plaintiff expects to receive more information regarding the actual amounts of damages during discovery

## COUNT III
## FRAUDULENT MISREPRESENTATION AND CONCEALMENT
### (*Against All Defendants*)

85.     To the extent not inconsistent herein, the above allegations contained in paragraphs 1 through 84 of this Complaint are incorporated by reference as if fully set forth herein. This cause of action is alleged in the alternative or in addition as authorized by FED. R. CIV. P. 8.

86.     Defendants' actions were done fraudulently, maliciously, and oppressively. SJR is therefore entitled to punitive and exemplary damages against Defendants in an amount sufficient to punish and make an example of them.

87.     Defendants, by means of a scheme designed to defraud members of SJR of its investments, made material misrepresentations and omissions of fact to SJR concerning the financial condition of SJR's investment as well as the use and misappropriation of SJR's resources, fully described above and incorporated herein.

88.     After entering into the June 29, 2020 Agreement and continuing after entering into the September 20, 2020 Agreement, Defendants and its agents, including Defendant R Vera, made misrepresentations in the course of its business, or in a transaction in which it has a pecuniary interest, for the guidance of SJR in their business; Defendants and its agents, including Defendant R Vera, failed to exercise reasonable care or competence in obtaining or communicating the information about the investment proceeds, financial statements of Defendant Alltex Refinery payments owed to SJR under the July 29, 2020 Agreements, use of SJR's investment funds, ownership of property purchased with SJR's investment funds, membership in Defendant Alltex Refinery; and SJR suffered pecuniary loss by justifiably relying on the misrepresentations. These negligent misrepresentations permit recovery of losses sustained by SJR caused by the misrepresentations, other than SJR's benefit of June 29, 2020 Agreement and September 20, 2020

Agreement, such as expenses, fees, and costs that SJR incurred after entering into the June 29, 2020 Agreement and September 20, 2020 Agreement that it would not have but for those post-Agreement misrepresentations.

## COUNT IV
## VIOLATION OF TEXAS SECURITIES ACT
### (*Against All Defendants*)

89.     To the extent not inconsistent herein, the above allegations contained in paragraphs 1 through 88 of this Complaint are incorporated by reference as if fully set forth herein. This cause of action is alleged in the alternative or in addition as authorized by FED. R. CIV. P. 8.

90.     Section 4.A of the Securities Act defines securities to include any "investment contract." The investment opportunities offered for sale and sold by Defendants to Plaintiff for investor profit constitute investment contracts and, therefore, are securities as defined by the Securities Act.

91.     There was investment of money by Plaintiff, a common enterprise in Defendant Alltex with an expectation of profits by Plaintiff, and Plaintiff did not make any significant efforts to manage or obtain the profits in return on the investment, and the efforts made by Defendant Vera on behalf of Defendants were undeniably significant and affected the failure and success of the enterprise/investment opportunity, those essential managerial efforts which affect the failure or success of the enterprise. There was an expectation of profits, and Defendants enticed potential investors, such as Plaintiff, with substantial rates of return.

92.     After the investment of funds by Plaintiff in the amount of $100,000.00 and $50,000.00 respectively, Plaintiff had no duties other than to wait on its profits or returns. Plaintiff had no way to remove Defendants from continually committing fraud, or any way to prevent Defendants from continually causing them harm. The investment opportunities offered for sale

and sold to Plaintiff by Defendants were investment contracts; thus, Defendants are selling securities under Texas law.

93.     These securities offered for sale and sold by Defendants are not on information and belief registered with the Commissioner as required by Section 7 A(1) of the Securities Act, and nor has a permit been granted for the sale of such securities as required by Section 7 of the Securities Act.

94.     Section 12.A of the Securities Act requires that all persons selling or offering to sell securities in Texas must be registered under the Act. During the period that securities were sold and offered for sale, Defendants were not registered as dealers or agents as required by Section 12.A of the Securities Act.

95.     The use of fraud and fraudulent practices in connection with the offer for sale and sale of securities is prohibited by Sections 4.F, 25-1, and 32.A of the Securities Act. Defendants, in the issuance, sale, promotion, negotiations, advertisement, or distribution of securities in the State of Texas, have engaged in fraud and fraudulent practices by misrepresenting material facts and intentional failing to disclose material facts as outlined above. Defendants, with intent to deceive or defraud or with reckless disregard for the truth or the law, have materially aided, and are materially aiding, one another in the fraudulent practices set forth above.

96.     As a result of these violations, and pursuant to § 581-33(D)(1) of the Texas Securities Act, Plaintiff is entitled to have the above-alleged transactions, including the June 29, 2020 Agreement and September 20, 2020 Agreement rescinded, and, upon tender of the securities, to recover from the Defendants: (a) the consideration paid for the securities plus interest thereon at the legal rate from the date of purchase by the Plaintiff; (b) plus costs and attorney's fees; (c) less the amount of any income Plaintiff received from the securities prior to their tender.

**COUNT V**
**VIOLATION OF SECTION 10(b) AND SECTION 10(b)-5 OF THE UNITED STATES SECURITIES EXCHANGE ACT**
(*Against All Defendants*)

97.     To the extent not inconsistent herein, the above allegations contained in paragraphs 1 through 96 of this Complaint are incorporated by reference as if fully set forth herein. This cause of action is alleged in the alternative or in addition as authorized by FED. R. CIV. P. 8.

98.     As more fully set forth in the factual allegations above, Defendants, through the use of the mails and the means and instrumentalities of interstate commerce, fraudulently induced Plaintiff to purchase investments, being marketed by Defendants through the use of materially false and misleading written statements via e-mail and text message, sales materials and oral presentations.

99.     Defendants knowingly transmitted to Plaintiff and disseminated, directly and through its agents, materially false and misleading statements, as more fully described above, describing and recommending the purchase of the securities purchased by Plaintiff.

100.     At the time of the misstatements and omissions described above, Defendants knew or should have known that such statements were materially false and misleading and omitted facts required in order to make the statements made, in light of the circumstances under which they were made, not misleading, but knowingly or recklessly made such statements to Plaintiffs in order to induce them to purchase the investments.

101.     Plaintiff reasonably relied upon the information provided to it and statements made by Defendant Alltex and its agent, Defendant R Vera, recommending the purchase of the securities in Defendants' oil and gas purchasing business. At the time of such investments, Plaintiff had no knowledge that the information and recommendations provided by Defendants contained material

ORIGINAL COMPLAINT                    23

misstatements and omissions. Plaintiff would not have purchased the securities but for the materially false and misleading information provided to them by Defendants.

102.    Because of Defendants' material misrepresentations and omissions, and as a result of their investments, Plaintiff has suffered damages including the substantial depletion of its original investment capital.

103.    By engaging in the conduct described above, each of the defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## COUNT VI
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT VIOLATIONS
### (*Against Defendant Russell L. Vera*)

104.    To the extent not inconsistent herein, the above allegations contained in paragraphs 1 through 103 of this Complaint are incorporated by reference as if fully set forth herein. This cause of action is alleged in the alternative or in addition as authorized by FED. R. CIV. P. 8.

105.    Defendant R Vera's scheme as alleged herein to defraud SJR out of investment funds violates 18 U.S.C § 1962(c).

106.    Pursuant to 18 U.S.C. § 1964(c), RICO provides a private right of action to any person injured in his business or property by reason of a violation of section 18 U.S.C. § 1962. SJR qualifies as such a person, and it has been directly and proximately injured in its businesses by the fraudulent acts of Defendant R Vera that induced SJR into the bogus Investment Scheme and induced SJR into incurring additional expenses after the initial investment scheme.

107.    Defendant R Vera, the RICO individual, violated § 1962(c) of RICO because he was employed by or associated with RICO enterprises, Alltex Refinery and Alltex Operating, that were/are engaged in, or the activities of which affect, interstate or foreign commerce—and

Defendant R Vera conducted or participated, directly or indirectly, in the conduct of Alltex Refinery's and Alltex Operating's affairs through a pattern of racketeering activity. Alltex Refinery and Alltex Operating are Texas companies, SJR is a New Mexico company, and the investment opportunities were located in Texas.

108.    Defendant R Vera's pattern of racketeering activity by which he conducted and participated in Alltex Refinery's and Alltex Operating's affairs includes wire fraud, that is, the multiple text messages, emails and attachments sent by him (or by an agent acting under his authority) to SJR both before and after the investment. Such text messages and emails were sent via interstate wire to execute Defendant R Vera's scheme to defraud and harm SJR, to obtain money by false pretenses, and to further conceal the scheme. Additionally, Defendant R Vera needed to conceal the scheme for as long as possible so that he could continue to induce SJR to make a second investment and to induce other borrowers into investments based on misrepresentations concerning Defendant R Vera's intent with respect to investments in his oil and gas businesses and sales of shares of his oil and gas business.

109.    Defendant R Vera's acts of racketeering activity are related, and they pose a threat of continuing criminal activity. The acts are related because they involve the same or similar purposes, participants, victims, and methods of commission, and are not isolated events. The acts also pose a threat of continuing criminal activity over an open period of time because they are the regular way in which Defendant R Vera conducts Alltex Refinery's and Alltex Operating's affairs, and the acts are such that Defendant R Vera may utilize such acts in the future with respect to other investors, through either Alltex Refinery, Alltex Operating, or any subsequently organized companies. The acts were also continuous over a closed period time, from June 2020 to February 2021.

## COUNT VII
## VIOLATION OF TEXAS THEFT LIABILITY ACT
### (*Against Defendant Vera*)

110.    To the extent not inconsistent herein, the above allegations contained in paragraphs 1 through 109 of this Complaint are incorporated by reference as if fully set forth herein. This cause of action is alleged in the alternative or in addition as authorized by FED. R. CIV. P. 8.

111.    Under the Texas Theft Liability Act, a person who commits theft by unlawfully appropriating property with intent to deprive the owner of property is liable for the resulting damages. Tex. Civ. Prac. & Rem. Code Ann. §§ 134.002(2), 134.003(a) (Vernon 2005); Tex. Penal Code Ann. § 31.03(a) (Vernon Supp. 2009).

112.    As agent of Defendant Alltex Refinery and Defendant Alltex Operating, Defendant R Vera had direct and/or indirect control and possession of partner funds and resources, including those of SJR, in the amount of at least $150,000.00.

113.    Defendants misappropriated and/or and unlawfully took SJR funds and resources, as well as income distribution payments owed to SJR, with intent to deprive SJR, the owner of property, of said funds and resources.

114.    In one instance, Defendants took and unlawfully used for its own benefit investment funds in an amount of $150,000.00 plus income distributions owed to SJR to purchase property located in Smiley, Texas for its own benefit.

115.    In addition to the actual damages sustained, SJR is also entitled to recover its reasonable and necessary attorney's fees under the Texas Theft Liability Act.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY
### (*Against Defendant Vera*)

116.    To the extent not inconsistent herein, the above allegations contained in paragraphs 1 through 115 of this Complaint are incorporated by reference as if fully set forth herein. This cause of action is alleged in the alternative or in addition as authorized by FED. R. CIV. P. 8.

117.    As agent of Defendant Alltex Refinery and Defendant Alltex Operating, Defendant R Vera owed a fiduciary duty to SJR by and through the contractual agreements with SJR and by SJR entrusting investment funds to Defendants.

118.    Defendant Vera breached his duty to provide material information relating the financial status of Defendant Alltex Refinery and Defendant Alltex Operating, SJR's investment and payments owed to SJR. Defendants also concealed material information from SJR and failed to disclose certain facts known to Defendants. Specifically, Defendants failed to disclose the accounting and financial information owed to SJR relating to the payments it was entitled to receive under the agreement.

119.    Defendants were intentionally silent when they had a duty to share the information known to them regarding the foregoing acts.

120.    But for Defendant R Vera's breach and failure to disclose material facts, SJR would not have suffered financial harm and would have intervened to prevent Defendant Vera from engaging in these unlawful and tortious acts.

121.    SJR has suffered actual damages as a result of Defendant Vera's conduct and breach of his fiduciary duty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

   a.   SJR is entitled to actual damages in an amount to be proven the hearing, plus a statutory minimum sum not to exceed $1,000.00 per act of theft, plus attorney's

fees;

b.  Compensatory, actual, unjust enrichment, and consequential damages, as to each Defendant as to each claim;

c.  Exemplary damages under Section 41 .003(a)(1) of the Texas Civil Practice and Remedies Code, as Defendants perpetrated a fraud upon and acted with malice with respect to SJR;

d.  An accounting to determine the precise amounts of damages to be awarded to SJR caused by Defendants;

e.  Attorney's fees incurred in the prosecution of this action pursuant to, Texas Civil Practice & Remedies Code Sections 38.001, including all fees necessary in the event of a judicial enforcement of this arbitration award and all appeals of this cause to the Court of Appeals or Texas Supreme Court, as the deemed equitable and just;

f.  In the alternative, recission of the July 29, 2020 Agreement and September 20, 2020 Agreement;

g.  Restitution;

h.  Constructive trust;

i.  Receivership;

j.  Disgorgement;

k.  Equitable relief;

l.  In the alternative, appropriate injunctive relief such as specific performance of the September 20, 2020 Agreement;

m.  In the alternative, Judicial Dissolution of Alltex Refinery LLC;

n.  Costs and expenses incurred;

o.   Pre-judgment and post-judgment interest; and

p.   Such other and further relief to which SJR may be entitled at law or in equity;

q.   Award of any and all other relief that this Court deems just and proper.

DATED:  July 23, 2021

Respectfully submitted,

<u>/s/ Mateo Z. Fowler</u>
Mateo Z. Fowler
State Bar No. 24062726
mateofowler@mzflaw.com
**MZF LAW FIRM, PLLC**
1105 Nueces Street, Ste. A
Austin, TX 78701
Telephone: (281) 546-5172

**ATTORNEYS FOR PLAINTIFF**